UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| POOYA OSKOUIE, individually and on behalf of others similarly situated,<br><br>                            Plaintiff,<br><br>v.<br><br>ACRO SERVICE CORP.; and DOES 1-20, inclusive,<br><br>                            Defendants. | Case No.: 21-cv-01736-AJB-AHG<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION**<br><br>**(Doc. No. 3)** |

Presently before the Court is Defendant Acro Service Corp.'s ("Defendant") motion to compel arbitration in Pooya Oskouie's ("Plaintiff") civil action for alleged labor and employment violations. (Doc. No. 3.) The motion has been fully briefed, (Doc. Nos. 6, 8), and the Court heard oral arguments on January 6, 2022 on the parties' interpretations of the relevant arbitration agreement provisions. For the reasons stated herein, the Court **GRANTS** Defendant's motion.

1

## I. BACKGROUND

This case concerns Plaintiff's allegations that throughout his employment with Defendant, Defendant denied him protections and benefits under the California Labor Code. Specifically, Plaintiff claims Defendant is liable for: (1) meal and rest period violations, (2) minimum wage violations, (3) overtime violations, (4) unlawful deductions from earned wages, (5) wage statement violations, (6) failure to reimburse for business expenses, (7) failure to pay wages upon separation, and (8) Business and Professions Code § 17200 violations.

At the time of his hire, Plaintiff signed an arbitration agreement ("Agreement") which stated he understood and agreed to resolve "covered claims" through arbitration. (Doc. No. 3-1 at 8.) Further, Plaintiff agreed to waive his right to any trial in any federal or state court "in favor of arbitration for covered claims." (Doc. No. 4 ¶ B.) Importantly, the Agreement excluded "any claim that cannot be required to be arbitrated as a matter of law." (*Id.* ¶ C.)

Plaintiff filed his class action complaint against Defendant in San Diego Superior Court on August 3, 2021. (*See* Doc. No. 1-3.) Defendant removed the matter to federal court on October 6, 2021. (Doc. No. 1.) Defendant now moves the Court to compel individual arbitration. (Doc. No. 3.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the enforcement of arbitration agreements involving interstate commerce. 9 U.S.C. § 2. Pursuant to § 2 of the FAA, an arbitration agreement is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* The FAA permits "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in [the] agreement." *Id.* § 4.

///

2

21-cv-01736-AJB-AHG

Given the liberal federal policy favoring arbitration, the FAA "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). Thus, in a motion to compel arbitration, the district court's role is limited to determining "(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank Nat'l Ass'n*, 673 F.3d 947, 955 (9th Cir. 2012) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. *Id.*

## III.  DISCUSSION

### A.  Whether a Valid Agreement to Arbitrate Exists

First, the Court must resolve whether *Kilgore*'s "validity" prong is satisfied. The parties disagree about the validity and enforceability of the Agreement's "Waiver of Class and Collective Claims," Paragraph H, which states: "Both the [Defendant] and [Plaintiff] agree that all claims subject to this Agreement will be arbitrated only on an individual basis, and that both the [Defendant] and [Plaintiff] *waive the right* to participate in or receive money or any other relief *from any class, collective or representative proceeding*." (Doc. No. 4 at 1) (emphasis added). If Paragraph H were found to be unenforceable, the Agreement's "Savings Clause and Conformity Clause," Paragraph P, requires that "any claim brought in a class, collective or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims." (Doc. No. 4 at 3.) Thus, if Paragraph H were found unenforceable, the Arbitration Agreement would be invalid here.

Defendant urges the Court to compel arbitration of Plaintiff's claims under the FAA and relevant case law because Paragraph H is valid, and Paragraph H's validity leads to a valid overall agreement to arbitrate. (Doc. No. 3-1 at 18–19.) In opposition, Plaintiff disputes Paragraph H's enforceability because it allegedly waives claims brought under the Private Attorneys General Act of 2004 ("PAGA"), Cal. Labor Code § 2698 et seq. (Doc.

No. 6 at 4.) Plaintiff contends that due to Paragraph H's unenforceability, the Court should retain jurisdiction for the instant action under Paragraph P.

### 1. Whether Paragraph P Refers to Paragraph H or to "Class" and "Collective" Claims

As an initial matter, Defendant lodges a semantic argument regarding the "waiver of class and collective claims" referred to in the "Savings Clause and Conformity Clause," Paragraph P. (Doc. No. 8 at 6.) Defendant argues the waiver of either *class* claims or *collective* claims would need to be unenforceable for Paragraph P to trigger, rather than the entirety of Paragraph H, which is entitled "Waiver of Class and Collective Claims." (*Id.* at 7.) The language at issue in Paragraph P specifically states:

> If *the waiver of class and collective claims* is found unenforceable, then any claim brought in a class, collective or representative action basis must be filed in a court of competent jurisdiction, and such court shall be the exclusive forum for such claims.

(Doc. No. 4 ¶ P (emphasis added).)

Paragraph P appears to refer to a single waiver that aligns perfectly with Paragraph H's title, "Waiver of Class and Collective Claims." Thus, for purposes of the instant motion, the Court interprets Paragraph P to refer to Paragraph H in its entirety and not the waiver of class claims or collective claims generally.

### 2. Whether Paragraph H Is Enforceable

The Supreme Court of California has held contractual waivers are unenforceable if they call for arbitration hearings to be the sole venue for disputes brought under PAGA. *Iskanian v. CLS Transportation L.A., LLC*, 59 Cal. 4th 348 (2014). Nevertheless, the United States Supreme Court has held the FAA preempts state laws that interfere with arbitration's "fundamental attributes," including its procedural informality. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 348–49 (2011). Although PAGA waivers appear preempted by *Concepcion* at first blush, the Ninth Circuit Court of Appeals has weighed in on this discrepancy. The Ninth Circuit held: "The *Iskanian* rule does not stand as an obstacle to

1  the accomplishment of the FAA's objectives, and [*Iskanian*] is not preempted." *Sakkab v.
2  Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 427 (9th Cir. 2015). The Supreme Court
3  thereafter reapplied its holding from *Concepcion* in *Epic Systems Corp. v. Lewis*, 138 S.
4  Ct. 1612 (2018). However, *Epic Systems* failed to expand upon *Concepcion* in such a way
5  as to abrogate *Sakkab*. *See United States v. Green*, 722 F.3d 1146, 1150 (9th Cir. 2013)
6  (specifying that even "strong[] signals" from the Supreme Court that our precedent is
7  wrong do not allow a three-judge panel to overrule circuit precedent). As a result, *Sakkab*
8  and *Iskanian* still constitute good law and control the Court's analysis for the instant
9  motion.

10      *Iskanian* determined the permissibility of waiving representative PAGA actions.
11  *Iskanian*, 59 Cal. 4th at 359. However, in that case, both parties agreed the term
12  "representative waivers" covered representative actions under PAGA. *Id.* at 377 ("There is
13  no dispute [between the parties] that the contract's term 'representative actions' covers
14  representative actions brought under the Private Attorneys General Act."). Here, however,
15  there is a dispute as to the scope of the word "representative." (Doc. No. 8 at 5.)

16      First, the statement within Paragraph H that the parties waive "any" right to
17  participate in "representative" proceedings could be interpreted to include the waiver of
18  PAGA actions. Under this interpretation, *Iskanian* appears analogous to the instant matter,
19  and Plaintiff would then have a legal foothold for keeping the instant dispute in court.
20  However, even a cursory reading of the preceding independent clause in Paragraph H shuts
21  the door on this pathway. Under the instant agreement, the parties waive their rights to
22  bring "claims *subject to this agreement*." (Doc. No. 4 ¶ H (emphasis added).) The
23  Agreement states "[a]ny claim that cannot be required to be arbitrated as a matter of law is
24  also not a Covered Claim under this Agreement." (*Id.* ¶ C.) Defendant asserts that because
25  PAGA claims "cannot be required to be arbitrated as a matter of law," it is not a "Covered
26  Claim" and does not invalidate the Agreement. (Doc. No. 8 at 7.)

27      Unlike the instant case, the *Iskanian* court operated from the position that PAGA
28  claims were waived. Only after the definition of "representative" claims was no longer at

issue did the Ninth Circuit hold unenforceable those waivers that unambiguously bar parties from bringing PAGA claims to court. *Iskanian*, 59 Cal. 4th at 378. The *Iskanian* court did not rule on ambiguous waivers of rights to bring "class, collective, or representative proceedings" such as those presently at issue. (*See* Doc. No. 4 ¶ H.) Thus, *Iskanian* is inapplicable here. Plaintiff's argument that *Iskanian* provides a legal basis for the Court to deny the instant motion fails to persuade.

Moreover, Plaintiff's reliance on *Aguilera v. Matco Tools Corporation*, No. 3:19-cv-01576-AJB-AHG, 2020 WL 1188142 (S.D. Cal. Mar. 12, 2020), is misguided. (Doc. No. 6 at 6.) Plaintiff fails to account for the differences between that case's arbitration agreement language and the language from the instant agreement. The agreement in *Aguilera* read, "THE DISTRIBUTOR EXPRESSLY WAIVES ANY RIGHT TO ARBITRATE OR LITIGATE AS A CLASS ACTION OR ***IN A PRIVATE ATTORNEY GENERAL CAPACITY***." *Id.* at *10 (alteration in original). The language at issue in *Aguilera* directly implicated PAGA claims, but the instant agreement does not similarly refer to PAGA. (*See* Doc. No. 4.) Here, the only allusion to PAGA is the word "representative," while in *Aguilera*, the agreement expressly waived "Private Attorney General" proceedings. *Aguilera*, 2020 WL 1188142, at *10. *Aguilera*, like *Iskanian*, is not analogous to the instant agreement. Plaintiff's argument thus fails because *Aguilera* does not give the Court a legal basis for denying Defendant's motion.

Barring either (1) express, unambiguous language (such as that found in *Aguilera*) or (2) agreement between the parties regarding the scope of the word "representative" (as was present in *Iskanian*), the Court does not find Plaintiff's arguments convincing. As a result, the Court finds Paragraph H excludes PAGA claims and thus the Agreement is enforceable.

**B.      Whether the Agreement Encompasses the Dispute at Issue**

The Court's final task is to determine whether Plaintiff's labor and employment violation claims fall within the scope of the Arbitration Agreement. To determine whether an arbitration agreement encompasses a particular dispute, courts must "look first to

whether the parties agreed to arbitrate a dispute, not to general policy goals, to determine the scope of the agreement." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002). The Ninth Circuit has stated that "where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that [a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Int'l Alliance v. InSync Show Prods., Inc.*, 801 F.3d 1033, 1042 (9th Cir. 2015) (quoting *AT&T Techs., Inc. v. Comms. Workers of Am.*, 475 U.S. 643, 650 (1986) (quotation marks omitted)).

In this case, the Agreement provides the "Covered Claims" include "all common law and statutory claims relating to [Plaintiff's] employment . . . including, but not limited to, any claim for . . . unpaid wages . . . ." (Doc. No. 4 at 1.) The Class Action Complaint asserts nine causes of action for meal and rest period violations, minimum wage violations, overtime violations, unlawful deductions from earned wages, wage statement violations, failure to reimburse for business expenses, failure to pay wages upon separation, and Business and Professions Code § 17200 violations. (Doc. No. 1-3.) Because each of Plaintiff's claims are statutory claims relating to his employment, including claims for unpaid wages, all causes of action fall squarely within the scope of the Arbitration Agreement.

In sum, the Court agrees with Defendant that the present dispute is for the arbitrator to decide. Plaintiff fails to overcome the presumption that this dispute falls squarely within the scope of the parties' arbitration agreement.

## IV. CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendant's motion to compel arbitration. (Doc. No. 3.) Furthermore, pursuant to the FAA, the Court **STAYS** the judicial proceedings pending the outcome of any arbitration. *See* 9 U.S.C. § 3; *Martin Marietta Aluminum, Inc. v. Gen. Elec. Co.*, 586 F.2d 143, 147 (9th Cir. 1978) (holding that courts shall order a stay of judicial proceedings "pending compliance with a contractual

arbitration clause"). The parties are ordered to file a joint status report with this Court, detailing the progress of the arbitration in 180 days from the date of this order.

**IT IS SO ORDERED.**

Dated: January 7, 2022

                                              Hon. Anthony J. Battaglia
                                              United States District Judge